HDM:NMA/GN
F. #2021R00772

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
*   SEPTEMBER 19, 2023   *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

MARAT LERNER,

            Defendant.

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 23-15 (S-1) (NGG)
(T. 18, U.S.C., §§ 981(a)(1)(C),
982(a)(1), 982(a)(2), 982(b)(1), 1343,
1349, 1957(a), 2, 3147(1) and 3551 et
seq.; T. 21, U.S.C., § 853(p))

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

I. <u>The Defendant</u>

    1. The defendant MARAT LERNER was a resident of Brooklyn, New York. LERNER was the principal of the Lerner Group and the president and chief executive officer of Liberty One Funding Corporation ("Liberty One").

II. <u>Relevant Individuals and Entities</u>

    2. The Lerner Group was a mortgage modification and credit solutions business operating in New York. The defendant MARAT LERNER was the principal of the Lerner Group.

    3. Liberty One was a New York corporation authorized to do business under the assumed name "Testoni & Villa PLL."

4. Co-Conspirator-1, an individual whose identity is known to the Grand Jury, was an administrative assistant employed by the defendant MARAT LERNER and the Lerner Group and a resident of Brooklyn, New York.

5. Victim-1, an individual whose identity is known to the Grand Jury, was a client of the defendant MARAT LERNER and the Lerner Group. Victim-1 was a resident of Brooklyn, New York.

6. Victim-2 and Victim-3, who are married and are individuals whose identities are known to the Grand Jury, were clients of the defendant MARAT LERNER and the Lerner Group. Victim-2 and Victim-3 were residents of Queens, New York.

7. Victim-4, an individual whose identity is known to the Grand Jury, was a client of the defendant MARAT LERNER and the Lerner Group. Victim-4 was a resident of Queens, New York.

8. Victim-5, an individual whose identity is known to the Grand Jury, was a client of the defendant MARAT LERNER and the Lerner Group. Victim-5 was a resident of Brooklyn, New York.

9. Victim-6, an individual whose identity is known to the Grand Jury, was a client of the defendant MARAT LERNER and the Lerner Group. Victim-6 was a resident of Brooklyn, New York.

10. Financial Institution-1, Financial Institution-2, Financial Institution-3, Financial Institution-4, Financial Institution-5 and Financial Institution-6, entities the identities of which are known to the Grand Jury, conducted business in several states, including New York.

III.  The Fraudulent Scheme

11. In or about and between July 2015 and the present, both dates being approximate and inclusive, the defendant MARAT LERNER, together with Co-Conspirator-1 and others, engaged in a scheme to defraud certain clients of the Lerner Group (the "Victims") through material misrepresentations and omissions relating to, among other things, how the Victims' money would be used and by misappropriating the Victims' funds.

12. As a part of the scheme, the defendant MARAT LERNER would enter into agreements to assist the Victims with mortgage modifications to lower their mortgage interest rate, and/or monthly mortgage payments in exchange for a fee. LERNER instructed the Victims not to contact their mortgage banks directly and would also request the Victims' bank account numbers and routing numbers, which he claimed to need to make any necessary payments on the Victims' behalf. LERNER, Co-Conspirator-1 and others informed the Victims that they needed to make payments on their mortgages to either an escrow agent that would hold the funds until their mortgages had been modified, or to entities affiliated with their mortgages. LERNER identified "Testoni & Villa PLLC," "Testoni & Villa PLL" or "Testoni & Vill PLL" (together "Testoni & Villa") as one of these entities. Although LERNER and his co-conspirators claimed LERNER had no relationship with Testoni & Villa, in fact and as described above, Testoni & Villa was an assumed name for Liberty One, which was controlled by LERNER.

13. The defendant MARAT LERNER and his co-conspirators then used LERNER's access to the Victims' bank account numbers and routing numbers to draft bank checks, drawn on the Victims' accounts, which were made out to, among other things, Liberty One, Testoni & Villa or the Victims' mortgage banks. LERNER claimed falsely to the Victims

that he was transferring the funds to an escrow agent or to the Victims' mortgage banks, but in fact, the bank checks were deposited into bank accounts controlled by LERNER, including a bank account at Financial Institution-1 in the name of Liberty One and Testoni & Villa (the "Liberty One Account at Financial Institution-1"). Instead of using the money to pay the Victims' mortgage banks or holding it in escrow as represented, LERNER misappropriated the Victims' funds, using the money for business expenses and personal purposes, including luxury goods and expensive meals, a BMW automobile, on-line dating applications, on-line purchases and cash withdrawals and transfers between his accounts.

14. For example, between approximately April 2017 and November 2019, the defendant MARAT LERNER and others acting at his direction caused at least 95 bank checks from Victim-1's accounts at Financial Institution-2 and Financial Institution-3 to be deposited in the Liberty One Account at Financial Institution-1 and another account at Financial Institution-1 in LERNER's name (the "Lerner Account at Financial Institution-1") totaling $194,579.35. The bank checks were made out to Victim-1's mortgage banks or to Testoni & Villa. During the same period, LERNER paid approximately $6,525.32 to Victim-1's mortgage banks.

15. To conceal the fraud, the defendant MARAT LERNER and his co-conspirators created fraudulent documents from Testoni & Villa. For instance, in or about September 2020, LERNER sent Victim-1 two letters from Testoni & Villa acknowledging receipt of the funds transferred from Victim-1's accounts at Financial Institution-2 and Financial Institution-3 (the "Testoni Letters"). Among other things, the Testoni Letters falsely claimed that: (i) Testoni & Villa held the funds on behalf of Victim-1's mortgage banks, (ii) the funds "in your escrow account will be applied to your remaining [mortgage] loan balance, as applicable," and (iii) Testoni & Villa was transferring the funds to the mortgage banks. The Testoni Letters

purported to be from an attorney named "Robert Francis." LERNER also provided Victim-1 with an address for Testoni & Villa in Grandville, Michigan. The Testoni Letters did not disclose LERNER's connection to Testoni & Villa or the fact that LERNER controlled the Liberty One Account.

16. As a result of the fraud, Victim-1's mortgage banks initiated foreclosure proceedings. In or about and between May 2019 and December 2019, the defendant MARAT LERNER caused Victim-1 to file two Chapter 11 bankruptcy petitions in the Eastern District of New York to stave off foreclosure.

17. In addition to the Liberty One Account at Financial Institution-1 and the Lerner Account at Financial Institution-1, on or about January 12, 2023, LERNER opened an individual account at Financial Institution-2 ("LERNER Account at Financial Institution-2"). The next day, on January 13, 2023, LERNER opened two new business accounts in the name of Liberty One and Testoni & Villa with Financial Institution 2 (the "Liberty One Accounts at Financial Institution-2"). These accounts were also controlled by LERNER.

18. On or about March 3, 2023, LERNER also opened a new business account in the name of Liberty One and Testoni & Villa with Financial Institution 5 (the "Liberty One Account at Financial Institution-5") as well as an individual account at Financial Institution-5 ("LERNER Account at Financial Institution-5"). Both accounts were also controlled by LERNER. The above accounts are collectively referred to as the "LERNER-Controlled Accounts").

19. LERNER used the LERNER-Controlled Accounts to defraud other victims. Between approximately January 2016 and June 2023, LERNER and others acting at his direction also caused at least 98 bank checks from Victim-2's and Victim-3's joint account at

Financial Institution-4, totalling approximately $216,484.38, to be deposited in one or more of the LERNER-Controlled Accounts. The bank checks were made out to, among others, LERNER, Victim-2 and Victim-3's mortgage banks, Testoni & Villa, and Liberty One. During the same period, LERNER wired approximately $2,421.54 from the LERNER-Controlled Accounts to Victim-2 and Victim-3's mortgage banks. As a result of the fraud, Victim-2 and Victim-3's mortgage bank initiated foreclosure proceedings.

20. Between approximately December 2016 and June 2023, the defendant LERNER and others acting at his direction also caused at least 99 bank checks from Victim-4's accounts at Financial Institution-4 and Financial Institution-6, totalling approximately $311,309.59, to be deposited in one or more of the LERNER-Controlled Accounts. The bank checks were made out to, among other entities, Victim-3's mortgage banks, Testoni & Villa, and Liberty One. During the same period, LERNER did not wire any of these payments or issue checks from the LERNER-Controlled Accounts to Victim-4's mortgage banks. As a result of the fraud, Victim-4's mortgage banks initiated foreclosure proceedings.

21. Between approximately August 2017 and July 2023, the defendant LERNER and others acting at his direction also caused at least 87 bank checks from Victim-5's accounts at Financial Institution-5, totalling approximately $183,971.90, to be deposited in one or more of the LERNER-Controlled Accounts. The bank checks were made out to, among other entities, Victim-5's mortgage banks, Testoni & Villa, and Liberty One. During the same period, LERNER wired approximately $2,110.76 from the LERNER-Controlled Accounts to Victim-5's mortgage banks. As a result of the fraud, Victim-5's mortgage banks initiated foreclosure proceedings.

22.     In addition, between approximately July 2015 and January 2021, the defendant LERNER and others acting at his direction also caused at least 77 bank checks from Victim-6's accounts at Financial Institution-4, totalling approximately $190,223.46, to be deposited in one or more of the LERNER-Controlled Accounts. The bank checks were made out to, among others, Victim-6's mortgage banks and Testoni & Villa. During the same period, LERNER did not wire any of those payments or issue checks from the LERNER-Controlled Accounts to Victim-6's mortgage banks. As a result of the fraud, Victim-6's mortgage bank initiated foreclosure proceedings.

23.     In total, LERNER misappropriated at least approximately $1,085,511.06 from Victims 1-6 as part of the fraudulent scheme.

## COUNT ONE
(Wire Fraud Conspiracy)

24.     The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

25.     In or about and between July 2015 and the present, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant MARAT LERNER, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more clients of the Lerner Group, including Victim-1, Victim-2, Victim-3, Victim-4, Victim-5 and Victim-6 and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349, 3147(1) and 3551 et seq.)

## COUNTS TWO THROUGH FIFTEEN
(Wire Fraud)

26. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

27. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant MARAT LERNER, together with others, did knowingly and intentionally devise a scheme and artifice to defraud Victim-1, Victim-2, Victim-3, Victim-4, Victim-5 and Victim-6 and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

| COUNT | VICTIM | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE TRANSMISSION |
|---|---|---|---|
| TWO | Victim-1 | January 25, 2018 | LERNER deposited a bank check in the amount of $3,191.33 drawn on Victim-1's account at Financial Institution-3 made out to one of Victim-1's mortgage banks in the Liberty One Account at Financial Institution-1 |
| THREE | Victim-1 | February 27, 2018 | LERNER deposited a bank check in the amount of $1,385.86 drawn on Victim-1's account at Financial Institution-2 and made out to one of Victim-1's mortgage banks in the Liberty One Account at Financial Institution-1 |
| FOUR | Victim-1 | November 29, 2018 | LERNER deposited a bank check in the amount of $1,543.94 drawn on Victim-1's account at Financial Institution-2 and made out to one of Victim-1's mortgage banks in the Liberty One Account at Financial Institution-1 |

| COUNT | VICTIM | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE TRANSMISSION |
|---|---|---|---|
| FIVE | Victim-1 | March 21, 2019 | LERNER deposited a bank check in the amount of $3,191.33 drawn on Victim-1's account at Financial Institution-2 and made out to one of Victim-1's mortgage banks in the Liberty One Account at Financial Institution-1 |
| SIX | Victim-1 | July 22, 2019 | LERNER deposited a bank check in the amount of $1,618.80 drawn on Victim-1's account at Financial Institution-2 and made out to Testoni & Villa into the Lerner Account at Financial Institution-1 |
| SEVEN | Victim-1 | November 27, 2019 | LERNER deposited a bank check in the amount of $1,527.87 drawn on Victim-1's account at Financial Institution-2 and made out to Testoni & Villa into the Liberty One Account at Financial Institution-1 |
| EIGHT | Victim-2 and Victim-3 | February 20, 2020 | LERNER deposited a bank check in the amount of $2,264.74 drawn on Victim-2's and Victim-3's joint account at Financial Institution-4 and made out to Testoni & Villa into the Liberty One Account at Financial Institution-1 |
| NINE | Victim-2 and Victim-3 | October 22, 2022 | LERNER deposited a bank check in the amount of $2,221.74 drawn on Victim-2's and Victim-3's joint account at Financial Institution-4 and made out to one of Victim-2's and Victim-3's mortgage banks into the Liberty One Account at Financial Institution-1 |
| TEN | Victim-4 | December 19, 2022 | LERNER deposited a bank check in the amount of $1,246.33 drawn on Victim-4's account at Financial Institution-4 and made out to Testoni & Villa into the Liberty One Account at Financial Institution-1 |

| COUNT | VICTIM | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE TRANSMISSION |
|---|---|---|---|
| ELEVEN | Victim-4 | December 27, 2022 | LERNER deposited a bank check in the amount of $3,748.74 drawn on Victim-4's account at Financial Institution-4 and made out to one of Victim-3's mortgage banks into the Liberty One Account at Financial Institution-1 |
| TWELVE | Victim-5 | October 4, 2022 | LERNER deposited a bank check in the amount of $1,107.01 drawn on Victim-5's account at Financial Institution-5 and made out to one of Victim-4's mortgage banks into the Liberty One Account at Financial Institution-1 |
| THIRTEEN | Victim-5 | November 11, 2022 | LERNER deposited a bank check in the amount of $4,067.88 drawn on Victim-5's account at Financial Institution-5 and made out to one of Victim-4's mortgage banks into the Liberty One Account at Financial Institution-1 |
| FOURTEEN | Victim-6 | September 4, 2020 | LERNER deposited a bank check in the amount of $2,632.45 drawn on Victim-6's account at Financial Institution-4 and made out to Testoni & Villa into the Lerner Account at Financial Institution-1 |
| FIFTEEN | Victim-6 | October 2, 2020 | LERNER deposited a bank check in the amount of $2,632.45 drawn on Victim-6's account at Financial Institution-4 and made out to Testoni & Villa in the Liberty One Account at Financial Institution-1 |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNTS SIXTEEN THROUGH TWENTY-ONE
(Wire Fraud)

28. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

29. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendant MARAT LERNER, together with others, while on release pursuant to an order of the United States District Court for the Eastern District of New York, dated January 18, 2023, issued under Title 18, United States Code, Section 3142, did knowingly and intentionally devise a scheme and artifice to defraud Victim-2, Victim-3, Victim-4 and Victim-5, and to obtain money and property from them by means of one or more materially false and fraudulent pretenses, representations and promises, and, for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, as set forth below:

| COUNT | VICTIM | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE TRANSMISSION |
|---|---|---|---|
| SIXTEEN | Victim-2 and Victim-3 | May 16, 2023 | LERNER deposited a bank check in the amount of $2,221.74 drawn on Victim-2's and Victim-3's joint account at Financial Institution-4 and made out to Liberty One into the Liberty One Account at Financial Institution-5 |
| SEVENTEEN | Victim-2 and Victim-3 | June 20, 2023 | LERNER deposited a bank check in the amount of $2,221.74 drawn on Victim-2's and Victim-3's joint account at Financial Institution-4 and made out to Liberty One into the Liberty Account at Financial Institution-5 |
| EIGHTEEN | Victim-4 | May 25, 2023 | LERNER deposited a bank check in the amount of $1,874.37 drawn on Victim-4's account at Financial Institution-4 and made out to Liberty One into the Liberty One Account at Financial Institution-5 |
| NINETEEN | Victim-4 | June 26, 2023 | LERNER deposited a bank check in the amount of $1,874.37 drawn on Victim-4's account at Financial Institution-4 and made out to Liberty One into the Lerner Account at Financial Institution-5 |
| TWENTY | Victim-5 | January 28, 2023 | LERNER deposited a bank check in the amount of $2,252.43 drawn on Victim- |

| COUNT | VICTIM | APPROXIMATE DATE | DESCRIPTION OF INTERSTATE WIRE TRANSMISSION |
|---|---|---|---|
| | | | 5's account at Financial Institution-5 and made out to Liberty One into the Liberty One Account at Financial Institution-2 |

(Title 18, United States Code, Sections 1343, 2, 3147(1) and 3551 et seq.)

COUNT TWENTY-ONE
(Money Laundering)

30. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

31. On or about November 6, 2018, within the Eastern District of New York and elsewhere, the defendant MARAT LERNER, together with others, did knowingly and intentionally engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

COUNT TWENTY-TWO
(Money Laundering)

32. The allegations contained in paragraphs one through 23 are realleged and incorporated as if fully set forth in this paragraph.

33. On or about September 26, 2019, within the Eastern District of New York and elsewhere, the defendant MARAT LERNER, together with others, did knowingly and intentionally engage in one or more monetary transactions in and affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from specified unlawful activity, to wit: wire fraud, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1957(a), 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH TWENTY

34. The United States hereby gives notice to the defendant that, upon his conviction of any of the offenses charged in Counts One through Twenty, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(2), which requires any person convicted of such offenses, to forfeit any property constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

35. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

    (e)  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(2) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TWENTY-ONE AND TWENTY-TWO

36. The United States hereby gives notice to the defendant that, upon his conviction of either of the offenses charged in Counts Twenty-One and Twenty-Two, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offenses to forfeit any property, real or personal, involved in such offenses, or any property traceable to such property.

37. If any of the above-described forfeitable property, as a result of any act of omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

*Carly Weinstein*
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2019R01687
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

MARAT LERNER,

Defendant.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(a)(2), 982(b)(1), 1343, 1349, 1957(a), 2, 3147(1) and 3551 et seq.; T. 21, U.S.C., § 853(p))

*A true bill.*

_____ *Carly Weinstein* _____
Foreperson

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
Clerk

*Bail, $* _____

*Nick M. Axelrod and Genny Ngai*
*Assistant U.S. Attorneys (718) 254-6883/(718) 254-6393*